ALBERT N. CURRY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Curry v. Commissioner
Docket No. 35601-87
United States Tax Court
T.C. Memo 1991-102; 1991 Tax Ct. Memo LEXIS 121; 61 T.C.M. (CCH) 2093; T.C.M. (RIA) 91102; March 6, 1991, Filed *121 Decision will be entered under Rule 155. Albert N. Curry, pro se. John W. Sheffield III, for the respondent. PARKER, Judge. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in, and additions to, petitioner's Federal income tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b) 1978
$ 138.33
$ 1,569.17 1979
1,872.88
2,186.44
1980
5,695.47
6,597.74
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years before the Court, and all rule references are to the Tax Court Rules of Practice and Procedure. After concessions by both parties, [1] the issues remaining for decision are: (1) Whether petitioner had unreported taxable income in each of the years 1978, 1979, and 1980 and, if so, the amount of such unreported taxable income each year; and (2) Whether petitioner is liable for the fraud addition for each of those years.
*122 FINDINGS OF FACT Most of the facts have been stipulated and are so found. The parties' stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Augusta, Georgia. Petitioner filed his Federal income tax returns for the years 1978 through 1980 with the Internal Revenue Service at Atlanta, Georgia. During the years before the Court, petitioner owned and operated, as a sole proprietorship, a hardware store called "Curry's Hardware Store" and a rental business called "Curry's Cornor" in Augusta, Georgia. In his hardware store business, petitioner maintained sales journals to which he posted daily sales directly from the totals shown on his cash register tapes. The amounts reflected in the sales journals were consistent with the amounts shown on the cash register tapes. In the course of his business, petitioner used a single bank account with the Georgia Railroad Bank in which to deposit his business receipts from his hardware business and from his rental business. He also had a personal account at the Citizens and Southern National Bank (C & S). The total deposits to petitioner's *123 business account at the Georgia Railroad Bank and the total sales journal entries for petitioner's hardware business for the years 1978, 1979, and 1980 are accurately shown on the adding machine tapes stipulated by the parties. The total sales or business receipts reflected in the sales journals (i.e., the figures taken from the daily cash register tapes) were deposited into the Georgia Railroad Bank business account. The sales journal entries did not reflect the rental income, but petitioner's rental income was also deposited into that business account. Rental income in the amounts of $ 19,650, $ 17,100, and $ 17,100, for the years 1978, 1979, and 1980, respectively, were deposited into that business account. However, the total deposits into that Georgia Railroad Bank business account for those years were substantially greater than the amount of gross receipts reported from petitioner's hardware store business and rental business. For the taxable years 1978, 1979, and 1980, petitioner gave his sales journals to his tax return preparer as representing all sales from his hardware business for the respective years. His sales journals were used by the tax return preparer as the *124 exclusive source of information regarding sales by petitioner's hardware store. Petitioner did not give the tax return preparer any bank statements, checkbooks, deposit slips, or other records from which gross receipts could be determined. Petitioner knew that if any sales receipts were not rung up on the cash register tapes and posted from those tapes to the sales journals, such amounts would not be reported on the Schedule C to his tax return as part of the gross receipts of the hardware business. During the years 1978, 1979, and 1980, petitioner's total deposits into his bank accounts [2] were as follows: Deposits 1978
1979
1980
Ga Railroad
Bank
$ 157,166.89
$ 133,736.52
$ 147,309.66
C & S Bank
2,729.52
3,104.59
2,554.93
Totals:
$ 159,896.41
$ 136,841.11
$ 149,864.59
*125 These deposits included transfers between the accounts or other non-income items, as follows: 1978
1979
1980
Transfers
$     0.00
$     0.00
$ 7,193.00
Other non-income
items
4,652.80
4,939.14
1,466.46
Totals:
$ 4,652.80
$ 4,939.14
$ 8,659.46
During the years before the Court, petitioner made certain cash expenditures from non-deposited receipts: 1978
1979
1980
Business expenses
$ 12,705.15
$  8,949.45
$ 14,418.09
Personal living
expenses
5,416.20
5,818.73 7,675.00
Certificate of deposit
bought with cash
7/13/79 not included
in the foregoing
bank deposits
4,019.69
Loan paid
1,560.80
Capital item - tools
1,073.58
Totals:
$ 18,121.35
$ 21,422.25
$ 22,093.09
During the years 1978, 1979, and 1980, petitioner had the following business expenses and deductions for his hardware business and his rental business: 1978
1979
1980
Inventory bought
during year
$  79,168.38
$  64,756.99
$  85,034.85 Reduction in
inventory
9,118.09
6,500.22
--    Increase in
inventory
(23,125.70)
Cost of goods
sold
$  88,286.47
$  71,257.21
[3] $  61,909.15 Schedule C expenses
except rent
Paid in cash
$  12,137.08
$   9,112.88
$  13,665.25 Other deductions
6,243.95
4,004.70
4,799.85 Paid by check
10,040.95
10,473.99
9,770.14 Totals:
$  28,421.98
$  23,591.57
$  28,235.24 Rental expenses: Depreciation
4,045.96
3,721.96
3,797.91 Paid in cash
--   324.00
114.32 Paid by check
17,022.14
16,864.95
15,039.79 $  21,068.10
$  20,910.91
$  18,952.02 Rental expenses plus
Schedule C expenses
plus cost of goods
sold
Totals:
$ 137,776.55
$ 115,759.69
$ 109,096.41 *126 The only other business expenses petitioner had in those years were the following deductions, which were not claimed on his tax returns: Sales Tax
$ 4,942.13
$ 4,111.13
$ 4,286.22
Pennington
Seed
491.00
925.60
Westinghouse
Credit
2,845.00
Bank Charges
127.23
502.65
178.13
Storm window
refund
732.10
Totals:
* $ 8,406.04
* $ 6,700.24
* $ 5,365.58
In 1978 petitioner received some air conditioners on consignment from Westinghouse. He sold some of the air conditioners *127 to his hardware store customers that year. Petitioner did not report either the sales or any expenses connected with such sales on his 1978 tax return. These air conditioner sales were not rung up on the cash register, were not included in the cash register tapes and sales journals, and thus were omitted from the gross receipts or sales reported on his Schedule C for the hardware business for that year. [4]
Some of petitioner's credit card sales were not rung up on the cash register, were not included in the cash register tapes and sales journals, *128 and thus were omitted from the gross receipts or sales reported on petitioner's Schedule C's for the hardware business. Payments on some credit sales (store charge account sales) were not rung up on the cash register, were not included in the cash register tapes and sales journals, and thus were omitted from the gross receipts or sales reported on petitioner's Schedule C's for the hardware business. In 1980 petitioner expanded his hardware business to include sales and installation of storm windows and screen repair work. Some of the sales from storm windows and screen repairs were not rung up on the cash register, were not included in the cash register tapes and sales journals, and thus were omitted from the gross receipts or sales reported on petitioner's Schedule C for the hardware business. Petitioner did not receive any gifts, inheritances, legacies, or devises during the years 1978, 1979, and 1980. Petitioner's net taxable income pursuant to the bank deposits method of reconstruction, and based on the figures stipulated by the parties, was as follows: 1978
1979
1980
Total bank
deposits * $ 159,896.41  * $ 136,841.11  * $ 149,864.59 Plus cash expenditures
paid from receipts
not deposited * 18,121.35  * 21,422.25  * 22,093.09 Subtotals:
$ 178,017.76 $ 158,263.36 $ 171,957.68 Less non-income
items * (4,652.80) * (4,939.14) * (8,659.46)
Subtotals:
$ 173,364.96 $ 153,324.22 $ 163,298.22 Less cost of goods
sold, business and
rental expense * (137,776.55) * (115,759.69) * (109,096.41)
Totals:
$  35,588.41 $  37,564.53 $  54,201.81 Less deductions
allowed but not
claimed on returns * (8,406.04) * (6,700.24) * (5,365.58)
Totals:
$  27,182.37 $  30,864.29 $  48,836.23 *129 All of the figures above bearing an asterisk are figures stipulated by the parties and found as facts by the Court. On his tax returns for the years 1978, 1979, and 1980, petitioner reported taxable income of only $ 15,468.75, $ 20,051.26, and $ 19,327.08, respectively. Petitioner understated and underreported his taxable income each year by the following amounts: 1978
$ 11,713.62
1979
10,813.03
1980
29,509.15
Accordingly, petitioner underpaid his taxes for each of the years before the Court. A portion of the underpayment of tax for 1980 was caused by an error made by petitioner's tax return preparer that year. The beginning inventory shown on line 1 of Schedule C-1 was reported as $ 71,257.21, whereas the correct beginning inventory was $ 54,325.16. [5] Due to this error by his tax return preparer, petitioner claimed $ 16,932.05 more than he was entitled to as a deduction for cost of goods sold in 1980. However, taxable income for 1980 was still understated by $ 12,577.10 attributable to omitted income. *130 Petitioner's tax return for the year 1978 was selected for a TCMP (Taxpayer Compliance Measurement Program) audit, which is a thorough audit of everything on the return. The revenue agent determined that petitioner's sales journal bookkeeping method was adequate provided that all receipts were in fact deposited into the cash register, recorded on the cash register tapes, and entered into the sales journals, which the return preparer used to determine gross receipts. The revenue agent found that the amounts entered into the sales journals were the same as the cash register tape amounts and that the amounts reported on Schedule C were the same as the amounts in the sales journal. However, when the revenue agent examined the bank records, he found that the deposits in the business account were substantially greater. He also found that petitioner made substantial cash expenditures, both personal and business, from receipts not deposited in the bank accounts. The audit was extended to the years 1979 and 1980, and thereafter a criminal tax investigation ensued. Ultimately petitioner was indicted for income tax evasion under section 7201 for all three years. However, he entered into *131 a written plea agreement to plead guilty to one count under section 7206(1) for the year 1978. [6] Petitioner pleaded guilty to willfully and knowingly filing a false tax return for 1978, a return that "he did not believe to be true and correct as to every material matter in that the said [return] stated on Schedule C, line one, that his gross receipts or sales were $ 120,071.81 whereas, as he then and there well knew and believed, his gross receipts or sales were substantially in excess thereof." *132 The audit resumed after the criminal case was concluded. During the audit petitioner admitted that he had not rung up all of his hardware business receipts in the cash register. In the trial in this Court, petitioner denied his earlier statements and insisted that only the rental business receipts were not rung up on the cash register and entered in the sales journal. The Court did not believe petitioner's denials or his version of what occurred with the revenue agents and assistant district counsel. ULTIMATE FINDINGS OF FACT 1. Petitioner understated his taxable income on his tax return for each of the years 1978, 1979, and 1980, and hence underpaid his tax each year. 2. The underpayment of tax each year was due to fraud on the part of petitioner. OPINION This fraud case involves the normal split burden of proof. Petitioner must prove any error in the deficiency determinations by a preponderance of the evidence, and respondent must prove fraud each year by clear and convincing evidence. , affg. a Memorandum Opinion of this Court, cert. denied ; Sec. 7454(a); Rule *133 142(a) and (b). Petitioner's record keeping system would be adequate provided that all receipts or sales for the hardware store business were rung up in the cash register. The cash register tape figures were entered in the sales journals, and the sales journals were used exclusively for the Schedule C gross receipts for the hardware business. The revenue agents found that petitioner's cash register tapes, sales journals, and Schedule C gross receipts figures were all consistent. However, petitioner did not ring up all receipts or sales of the hardware business in the cash register. Petitioner's bank deposits and cash expenditures from undeposited funds disclosed substantial amounts of unreported income. Respondent used the bank deposits and cash expenditures method to reconstruct petitioner's income. That method is a well recognized method of reconstructing income, and bank deposits are prima facie evidence of income. and footnote 4 (5th Cir. 1967) [7]; ; , affd. *134 . Respondent need not prove a likely source of that unreported income, but here there is such a likely source, the hardware business receipts or sales that were not rung up in the cash register. Once deficiencies are determined under the bank deposits and cash expenditures method, the taxpayer has the burden to show that the deposits do not constitute income or that other deductions properly reduce that income. , affg. in part and revg. in part a Memorandum Opinion of this Court. Petitioner has failed to carry his burden of proof as to the deficiency determinations. Indeed, as shown in the Findings of Fact above, petitioner *135 has stipulated to every underlying figure in the computations of petitioner's net taxable income for each year. It is true that in the stipulation, at the trial, and in his post-trial briefs, petitioner argued for various adjustments to these net taxable income figures, but he presented no evidence, testimonial or documentary, in support of his confusing arguments and proposed adjustments. [8] The Court concludes that petitioner did not sustain his burden of proof. *136 Respondent must prove by clear and convincing evidence the two elements of fraud: (1) the existence of an underpayment of tax each year, and (2) that some part of the underpayment is due to fraud. , affg. a Memorandum Opinion of this Court. Fraud is actual, intentional wrongdoing, and the intent is the specific purpose to evade a tax believed to be owing. ; , cert. denied . Respondent must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent collection of the tax. , affg. a Memorandum Opinion of this Court. Fraud will never be presumed. . Fraud is a question of fact and is to be determined on the basis of the whole record. , affg. , *137 cert. denied , rehearing denied . Fraud can seldom be, and need not be, established by direct evidence, but can be established by circumstantial evidence, by reasonable inferences drawn from the taxpayer's entire course of conduct. ; , affg. a Memorandum Opinion of this Court; ; . Here there can be little question that petitioner's taxable income was understated for each of the three years, and that those understatements resulted in underpayment of petitioner's tax each year. The real issue is whether those underpayments were due to fraud. There was a pattern of consistent understatement of substantial amounts of petitioner's income for the three years. This is strong evidence of fraud. ; , affg. a Memorandum *138 Opinion of this Court. Petitioner pleaded guilty to filing a false return under section 7206(1) for 1978. While intent to evade tax is not an element of the crime under section 7206(1), petitioner is collaterally estopped to deny that he willfully and knowingly filed a false return that year and that the falsity was that his return stated "on Schedule C, line one, that his gross receipts for sales were $ 120,071.81 whereas, as he then and there well knew and believed, his gross receipts or sales were substantially in excess thereof." ; ; . This 1978 false return and the false returns for the other years cannot be blamed on petitioner's tax return preparer. See . Petitioner gave the tax return preparer his sales journals as the exclusive source of information on his gross receipts or sales in the hardware store business. Petitioner knew that if receipts or sales were not rung up on the cash register and included *139 in the cash register tape figures which were entered in the sales journals, that such receipts or sales would not be entered in the sales journals and would not be reported on the Schedule C's for his hardware store business. Petitioner knew that in each year some receipts or sales (air conditioner sales, charge card sales, payments on store charge accounts, sales and installation of storm windows, and screen repairs) were not rung up on the cash register. Failure to maintain complete and accurate books and records is also evidence of fraud. ; . Here, petitioner's record system would have been adequate if all receipts or sales had been rung up on the cash register. He knew, however, that all receipts or sales of the hardware business had not been rung up. Petitioner, on at least two occasions during the audit, admitted to revenue agents and to an assistant district counsel that some of the receipts or sales had not been rung up on the cash register. At the trial in this Court petitioner denied he had ever made those statements, and the Court did not believe *140 him. His belated story that the only receipts not rung up on the cash register and not entered in the sales journals were receipts from his rental business was inherently incredible. Also petitioner's total rental business receipts and the hardware store receipts shown in the sales journals simply cannot account for the substantial bank deposits and cash expenditures in this case. Petitioner obviously had to know that the cash expenditures (both business expenses and personal expenses) that he made from receipts not deposited in the bank were not being reported as part of his gross receipts or sales and were not being accounted for on his tax returns in any way. Petitioner's cash expenditures from undeposited receipts amounted to $ 18,121.35, $ 21,422.25, and $ 22,093.09, for the years 1978, 1979, and 1980, respectively. Based on the record as a whole and the Court's opportunity to observe the demeanor of petitioner and the other witnesses and to judge their credibility, the Court is satisfied that respondent has proved by clear and convincing evidence fraud on the part of petitioner for each year. To reflect the concessions and the above holdings, Decision will be entered *141 under Rule 155. Footnotes
1. Most, if not all, of the figures stipulated by the parties differ from the amounts in the statutory notice of deficiency, hence requiring further proceedings under Rule 155 in this case. The parties have also stipulated, and the Court so finds, that petitioner made the following advance payments after the tax returns were filed but before the statutory notice of deficiency was issued: 1978 Amount of Advance Payment
Date of Advance Payment $  3,000.00
03-08-82
499.31
05-02-86
Total: $  3,499.31
1979 $  2,500.00
03-08-82
2,060.90
05-02-86
Total: $  4,560.90
1980 $  2,500.00
03-08-82
5,000.00
11-08-82
5,794.24
05-02-86
Total: $ 13,294.24
Generally, these advance payments were taken into account in computing the tax deficiencies in the notice of deficiency, but were properly excluded in computing the amount of the fraud addition each year. However, it is not clear whether the $ 5,794.24 advance payment for 1980 was applied to tax or to interest, or not taken into account at all. However, petitioner's complaints about these various payments and questions as to "where is this money" can be dealt with later in the Rule 155 proceedings.↩
2. During the years 1978, 1979, and 1980, petitioner's wife also had bank accounts at the First National Bank and Georgia Federal Bank. During these years, the only deposits to the First National Bank account were small interest deposits of about $ 200 per year, which the parties treat as immaterial for purposes of this case. The total deposits in the text above have been adjusted by the parties to exclude all renewals of certificates of deposit. The only deposit to Georgia Federal during the years in question was $ 60,000 which was a transfer from another account. The parties treat these renewals and transfer as immaterial for purposes of this case and have removed them from the stipulated deposit amounts in the text above to simplify the case. No certificates of deposit were withdrawn that were not renewed or redeposited during the years in question. No funds represented by any of petitioner's certificates of deposit were spent by petitioner or his wife during the years 1978, 1979, and 1980.↩
3. See infra↩ note 5.
*. The underlying figures stipulated by the parties add up to only$ 8,405.36, $ 5,539.38, and $ 5,196.45, for the years 1978, 1979, and 1980, respectively. However, the Court has accepted the parties' stipulated total figures, since those higher totals favor petitioner and appear in other paragraphs of the parties' stipulation.↩
4. While petitioner contends that he made no profit on these air conditioner sales, he presented no evidence as to the sales prices or as to any expenses. Thus, the Court cannot determine whether these transactions were merely a wash, as petitioner contends. In any event, his bare assertion that these sales resulted in a wash was not persuasive to the Court. Respondent has allowed petitioner expense deductions of $ 2,845 in connection with the air conditioner sales.↩
5. The stipulated cost of goods sold figure of $ 61,909.15 for the year 1980 reflects the correction of the tax return preparer's error. The return preparer had erroneously picked up the cost of goods sold for 1979 ($ 71,257.21) rather than the inventory at the end of 1979 ($ 54,325.16) as the opening inventory for 1980. The corrected cost of goods sold figure for 1980 is as follows: ↩
$  85,034.85
Inventory purchases in 1980 as
per tax return
+ 54,325.16
Beginning inventory for 1980 (as stipulated by parties
and as shown on the 1979
return as ending inventory
for 1979)
$ 139,360.01
- 77,450.86
Inventory at end of 1980, as
per tax return
$  61,909.15
Corrected cost of goods sold
for 1980
6. Petitioner's attorneys signed that written plea agreement. Petitioner also signed a statement that the plea agreement accurately and correctly stated the representations made to him. The United States District Court Judge considered that plea agreement "in conjunction with the interrogation by the Court of the defendant and his attorney at a hearing on his motion to change his plea and the Court [United States District Court for the Southern District of Georgia], finding that the plea of guilty [was] made freely, voluntarily, and knowingly", accepted the guilty plea and ratified and confirmed the plea agreement. Petitioner's complaints about his guilty plea are baseless. Moreover, petitioner is collaterally estopped to deny the legal effect of his guilty plea.↩
7. In (en banc), the Eleventh Circuit (to which any appeal in this case would lie) adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.↩
8. Petitioner seeks to reduce his net taxable income by the amounts of certain checks he wrote, checks written for other than business expenses or deductible personal expenses. He advances no factual or legal basis for such reductions. Petitioner continues to belabor certain figures in the statutory notice of deficiency or in the revenue agents' workpapers at an even earlier stage of the audit; in doing so, petitioner completely ignores the fact that he has now stipulated to the correct figures for these various items. Petitioner attempts to adjust certain figures on his tax returns without any factual or legal basis for doing so. He tries to adjust stipulated figures for one year by items from a different tax year. As best the Court can fathom his approach, petitioner seems to be trying to combine some elements of respondent's bank deposits and cash expenditures method with petitioner's own version of some type of net worth method of income reconstruction. In any event, the Court finds his various mathematical exercises rather baffling.↩